# IN THE SUPREME COURT OF MISSISSIPPI
## NO. 92-KA-00933-SCT

*DERRICK T. FISHER*

*v.*

*STATE OF MISSISSIPPI*

| | |
|---|---|
| DATE OF JUDGMENT: | 8/5/92 |
| TRIAL JUDGE: | HON. BILL JONES |
| COURT FROM WHICH APPEALED: | JACKSON COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | ROSS PARKER SIMONS |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL |
| | BY: PAT S. FLYNN |
| DISTRICT ATTORNEY: | NA |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| DISPOSITION: | REVERSED AND REMANDED - 9/5/96 |
| MOTION FOR REHEARING FILED: | 9/10/96 |
| MANDATE ISSUED: | 5/5/97 |

**BEFORE PRATHER, P.J., PITTMAN AND McRAE, JJ.**

**PITTMAN, JUSTICE, FOR THE COURT:**

Statement of the Case

¶1. The Appellant, Derrick Fisher, was tried and convicted of the capital rape of his eleven year-old niece. His appeal raises eight issues, five of which we feel merit discussion: whether the trial court erred by failing to require the State to narrow the time frame in the indictment to a specific date; whether certain communications between Fisher and his wife should have been allowed at trial; whether the State properly proved the age of Fisher at trial in accordance with the capital rape statute; whether the trial court erred in excluding the tesimony of defense witness Vicki Parker, Deputy Chancery Clerk of Jackson County; and whether the capital rape statute which requires the imposition of a death sentence or life imprisonment is a violation of the separation of powers doctrine. Because we find that certain statements made by Fisher to his wife were in confidence and constituted prejudicial error, we reverse and remand for a new trial consistent with this opinion.

Statement of the Facts

¶2. Fisher was indicted, tried and convicted of the capital rape of his eleven year-old niece. The indictment alleged that Fisher had carnal knowledge of his niece between the 14th day of April 1990 and the 1st day of September, 1990. This 140-day time span in the indictment was challenged in pre-trial motions, and the indictment was later amended on the day of trial to reflect a time period of thirty-one days, from July 1, 1990, to August 1, 1990.

¶3. According to the child's testimony, she had sexual intercourse with Fisher at least three times during a period covering several months in 1990. She could not give exact dates.

¶4. Rhonda Fisher, the defendant's wife, testified that the sexual relationship between Fisher and his niece was brought to light when she found a note their niece had written to Fisher. Detective Williams, who interviewed the defendant, testified at trial as did several other witnesses including the defendant's aunt, Shirley Anderson (to rebut the testimony of Rhonda), and the defendant himself. Fisher testified that he had never been alone with the child and never had sexual contact with her. Additionally, he said he had gone to the chancery court to have his wife committed for drug addiction about five months ago but dropped the action when he found out she would have to go to Whitfield.

Discussion of the Law

## I. DID THE TRIAL COURT ERR BY FAILING TO REQUIRE THE STATE TO NAME A SPECIFIC DATE IN THE INDICTMENT?

¶5. Prior to trial, Fisher filed a Motion to Quash the Indictment. He gave as his grounds the "vagueness" of the four month period of time covered by the indictment from "between the 14th day of April 1990 and the 1st day of September in the year of our Lord, 1990 . . ." The trial court denied his motion, but instructed the State to narrow the time frame as much as possible. The State then amended the indictment to show the time frame as "between the first day of July, 1990 and the first day of August, 1990." Fisher then filed a Motion to Compel a Definite Statement of Essential Facts and a Notice of Intent to Claim Alibi. The trial court denied the Motion and allowed the State to proceed on the indictment as amended. Fisher now claims that the thirty day period was too oppressive to alibi.

¶6. Fisher cites Mississippi Uniform Criminal Rules of Circuit Court Practice, rule 2.05[1] which requires the indictment to be a ". . . plain, concise and definite written statement of the essential facts charged," and to "fully notify the defendant of the nature and cause of the accusation against him." Fisher claims that it was "essential" that the prosecution provide him a specific date so he could maintain an alibi defense.

¶7. Fisher also cites *Van Norman v. State*, 365 So. 2d 644 (Miss. 1978), where the Court held that the state was required, since the defense was one of alibi, to prove the specific day of the crime. The indictment charged Van Norman with adultery. After the state's case concluded, the defense introduced evidence to show that he had an alibi for that day. The state was allowed to amend the indictment to show another date. The Court noted that adultery was not a continuing offense, and each act constituted a separate offense, therefore, the amendment constituted a new offense. *Id*. at 647. This case is factually distinguishable; Fisher knew well in advance the time covered by the

indictment.

¶8. Additionally, Fisher cites *Wilson v. State* , 515 So. 2d 1181 (Miss. 1987). Wilson was convicted of capital rape and raised as an issue on appeal the fact that the state had not narrowed the time of the crime to a specific date. The Court declined to reverse but said:

> However, we note that in cases of this nature, it is important that a defendant be given the specific date or dates of the alleged acts if at all possible. [cite omitted]

> In all fairness, notice of a specific date is often essential to the preparation of a defense-especially where an alibi defense is relied on.

*Id.* at 1183.

¶9. The law is clearly with the State on this issue. In fact, we disposed of a factually similar issue in *Morris v. State*, 595 So. 2d 840 (Miss. 1991). Morris claimed, as does Fisher, that the wide period of time in the indictment (three months) kept him from presenting an alibi defense to the sexual battery charge. Morris filed a Motion to Compel A Definite Statement of Essential Facts Morris citing *Wilson* for the proposition that notice of a specific date is essential to the preparation of a defense, especially an alibi defense. Justice Hawkins, speaking for the Court, stated that the indictment was sufficient in advising the defendant and in giving a time frame within which these (events) were supposed to have happened. Justice Hawkins pointed out that traditionally time and place requirements have been viewed as not necessitating specificity, because they ordinarily do not involve proof of an element of the crime. *Morris*, 595 So. 2d at 842 (citing 2 W. LaFave & L. Israel, Criminal Procedure § 19.2 (1984)). He further noted that *Wilson* requires the defendant be given the specific date only if possible. *Id.*

II. DID THE TRIAL COURT ERR BY ALLOWING AT TRIAL CONFIDENTIAL STATEMENTS MADE BY FISHER TO HIS WIFE?

¶10. Prior to trial, Fisher's attorney filed a Motion in Limine based on M.R.E. 504(b) to prohibit any marital communications that were to be confidential. The trial court denied the motion. At trial Fisher's wife, Rhonda, testified to a conversation between Derrick and her that took place before Derrick's aunt, Shirley Anderson. During which, Rhonda stated that Fisher "denied it [having sex with his niece] right there at the time." Rhonda testified shortly after this statement that "later on that day Derrick admitted the truth to me." No contemporaneous objection was made at that time. Sometime later during Rhonda's testimony, defense counsel objected on the basis of the marital privilege to prohibit Rhonda from testifying at that point to what Fisher had admitted.

¶11. Fisher argues that Rhonda's statements in which she stated he admitted it [the abuse] to her were confidential and barred by the marital privilege, which he invoked before trial, during trial and in a Motion for a New Trial. Fisher cites the Comment to Rule 504 "[r]ule 504 (b) states the general rule. One spouse can prevent the other from testifying regarding the confidential communication in either a civil or criminal proceeding." Fisher also cites several pre-rule cases that state one spouse is incompetent to testify against the other.

¶12. He also relies on *Bayse v. State*, 420 So. 2d 1050 (Miss. 1982), where a police officer was

allowed to testify to Mrs. Bayse's statements made to the police after a murder that incriminated her husband, and this Court reversed on the issue of spousal privilege. The Court referenced § 13-1-5 as the applicable statute insofar as the privilege asserted was concerned. Basically, the Court said that Mrs. Bayse was not <u>competent</u> to testify but labeled this a <u>privilege</u>.

¶13. The State maintains first that Fisher did not make a contemporaneous objection at the time the controversial statements were made. *See Irving v. State*, 498 So.2d 305 (Miss. 1986), *cert. denied,* 481 U.S. 1042 (1987). Additionally, the State argues that because Fisher's attorney cross-examined Rhonda concerning the statements made by the defendant, he is doubly barred from raising this issue on appeal. *See Mitchell v. State*, 539 So. 2d 1366, 1373 (Miss. 1989) (where the Court held that it was improper for the defendant's attorney to re-cross the witness concerning the objectionable testimony and then ask for a mistrial).

¶14. In the alternative, the State argues that the objectionable statement ("he denied it right there") was made before the aunt, therefore, not subject to the privilege. Miss. R. Evid. 504 (a); *Shell v. State*, 554 So. 2d 887, 894 (Miss. 1989), *cert. granted,* 498 U.S. 1 (1990) (remanded to MS Supreme Court for reconsideration of death sentence concerning aggravating circumstances). They argue that no "contemporaneous objection" bars consideration of the second objectionable statement ("later on that day Derrick admitted the truth to me").

¶15. In addition, the State notes a conceptual contradiction between M.R.E. Rules 504 and 601(a)(2). Rule 601(a)(2) states in pertinent part:

> (a) In all instances where one spouse is a party litigant the other spouse shall not be competent as a witness without the consent of both, except as provided in Rule 601(a)(1) or Rule 601(a)(2):

> (2) Either spouse is a competent witness and may be compelled to testify against the other in any criminal prosecution of either husband or wife for a criminal act against any child, . . .

The State argues, on the one hand, the spouse can be compelled to testify and, on the other hand, at the same trial be prohibited from giving relevant testimony.

¶16. Here, Fisher's attorney specifically moved the court prior to trial to exclude all privileged confidential communications between Fisher and Rhonda. We have held that a specific motion *in limine* overruled by the trial court will sufficiently preserve the error when no objection was made. *Kettle v. State*, 641 So. 2d 746, 748 (Miss. 1994). Cross-examination of Rhonda was Fisher's attorney's only recourse. *Id.* He did not waive the objection by cross-examining her.

¶17. Miss. Code Ann. §13-1-5 (1972) (Supp. 1995) excepts from spousal incompetency a spouse's testimony in the criminal prosecution of the other for a criminal act against any child. This statute essentially states the same rule as M.R.E. 601(a) (2) which the State maintains is in conflict with M.R.E. 504, the marital privilege. We take this opportunity to note the difference between the marital privilege and spousal incompetency. Rule 601(a) (2) abolishes spousal incompetence to testify in certain circumstances. The non-offender spouse may be called to testify, but the other spouse may still invoke the privilege regarding confidential communications that do not fall into an exception set out in 504(d). *Dycus v. State*, 396 So. 2d 23, 28 (Miss. 1981) (where the Court held "although

former spouses are not disqualified from testifying against each other as to events during the marriage, they may not reveal marital communications made with the expectancy of privacy.")

¶18. As the privilege stands today, the statement made by Fisher to Rhonda in which he denies the activity is removed from the privilege. It was made in front of a third person, Shirley Anderson, and thus not a confidential communication. *Shell*, 554 So. 2d at 894. Rhonda's statement that Derrick later told her the truth would be a violation of M.R.E. 504. This statement was made privately to Rhonda, and there is no indication of a third party also hearing it. This was a confidential statement to his wife that when admitted constituted prejudicial error. The error necessitates reversal and a new trial.

¶19. Miss. R. Evid. 601(a)(2) indicates an obvious growing concern about sexual and violent abuse against children. Today, we amend the exceptions in M.R.E. 504 (d) to reflect the same concern. The authority to adopt and amend the Mississippi Rules of Evidence is an inherent power of the judicial branch of government. *See* Miss. Const. Art. 6, § 144 (1890); *Hall v. State*, 539 So. 2d 1338, 1345-1346; *Hudspeth v. State Highway Comm'n*, 534 So. 2d 210, 213. The amendment to Rule 504(d) shall read:

> (**d**)**Exceptions**. There is no privilege under this rule in a proceeding in which one spouse is charged with a crime against (1) the person of any minor child or (2) the person or property of (i) the other spouse, (ii) a person residing in the household of either spouse, or (iii) a third person committed in the course of committing a crime against any of the persons described in (d) (1) or (2) of this Rule.

¶20. Rule 504(d) as revised shall apply prospectively upon publication in West's *SouthernReporter*.

> III. DID THE TRIAL COURT ERR BY ALLOWING THE DETECTIVE TO TESTIFY TO FISHER'S AGE OBTAINED WHILE RECORDING FISHER'S PERSONAL HISTORY AFTER ARREST?

¶21. Fisher also argues a) that the State must prove his age at trial and b) their only attempt to do so was inadmissable hearsay. Detective Eddie Williams testified that he obtained from Fisher his age of 26 while taking his personal history for the ongoing investigation.

A.

¶22. The capital rape statute states in pertinent part:

> (1) Every person eighteen (18) years of age or older who shall be convicted of rape by carnally and unlawfully knowing a child of fourteen (14) years, upon conviction, shall be sentenced to death or imprisonment for life in the State Penitentiary; provided, however, any person thirteen (13) years of age or over but under eighteen (18) years of age convicted of such shall be sentenced to such term of imprisonment as the court, in its discretion, may determine. . .

Miss. Code Ann. § 97-3-65 (1972). The State argues that proof of age is not necessary at the trial phase but only at the sentencing phase. We discussed this issue concerning the fondling statute in *Crenshaw v. State*, 520 So. 2d 131 (Miss. 1988). For comparison purposes that statute reads as follows:

> Any person above the age of eighteen (18) years, who, for the purpose of gratifying his or her lust, or indulging his or her depraved licentious sexual desires, shall handle, touch or rub with hands or any part of his or her body or any member thereof, any child under the age of fourteen (14) years, with or without the child's consent, shall be guilty of a high crime and, upon conviction thereof, shall be fined . . . or be imprisoned . .

Miss. Code Ann. § 97-5-23 (1972). We ruled in *Crenshaw* that in proving gratification of lust pursuant to this statute the State bears the burden of proving the person so charged was over the age of eighteen years. *Id*. at 133.

¶23. In a case involving the predecessor to the current fondling statute we also addressed this issue. *See Love v. State*, 211 Miss. 606, 52 So. 2d 470 (1951). There we said that the accused must be over 18 is "an affirmative fact which must be charged and proved by the state. It is not a mere formality." *Id*. at 471. The capital rape statute is written in similar fashion. We find the age of the accused to be a sine qua non of the crime of capital rape requiring proof by the State at trial.

B.

¶24. The only evidence of Fisher's age came from the testimony of Detective Eddie Williams who had obtained this information from Fisher in an interview. Fisher contends this is hearsay and was improperly admitted. The State argues that a report prepared by a law enforcement agency as a regular exercise of its duty is admissible under M.R.E. 803 (6), so long as the person who is the source of the information contained in the report was acting in the regular exercise of the agency's duty when he learned of the information. See *Lentz v. State*, 604 So. 2d 243, 249 (Miss. 1992). However, in *Lentz*, the witness was a Mississippi Crime Laboratory employee testifying to the results of the defendant's urine samples taken by an Alabama lab at the Mississippi Crime Lab's instruction. The Court found that the person who performed the test was acting within the lab's regular scope of business. The source in the instant case is Fisher who was not acting within the regular scope of business. *See Copeland v. City of Jackson*, 548 So. 2d 970 (Miss. 1989)

¶25. In *Copeland*, this Court held that it was error on the part of the trial court in refusing to allow into evidence the accident report filed by the officer on the scene. *Id*. at 975. The Court quoted the comment to Rule 803(6) in its analysis:

> However, the source of the material must be an informant with knowledge who is acting in the course of the regularly conducted activity. This is exemplified by the leading case of *Johnson v.Lutz*, 253 New York 124, 170 N.E. 517 (1930), which is still the applicable law today under the rule. That case held that a police report which contained information obtained from a bystander was inadmissible; *the officer qualified as one acting in the regular course of a business*, but the informant did not.

(Emphasis added). "Therefore, police reports prepared during the investigation of an accident should be admissible into evidence." *Id*. at 975. The Court also stated that "[i]n holding such report admissible we should not be understood as holding all the contents of the report were necessarily admissible. For example, there may be notations in such a report which are recitations of statements of others, and would be inadmissible even though the officer was present in court testifying." *Id*. at

975-976. Thus, even though the detective obtained Fisher's age during the regular course of investigation, the source was Fisher who was not routinely engaged in regularly conducted activity, and so the statement is not admissible under this exception.

¶26. Yet, we find that the statement of age made by Fisher to the officer admissible for another reason. The statemtent qualifies as an admission and is not hearsay. We have defined an admission as "a statement by the accused, direct or implied, of facts pertinent to the issue, and tending, in connection with other facts, to prove his guilt." *Reed v. State*, 229 Miss. 440, 91 So. 2d 269, 272 (1956). As previously determined, age of the defendant is an essential element of the crime of capital rape. Fisher's statement of his age tends to prove in connection with other facts the elements of the capital rape statute. In this instance, the testimony of the detective was proper.

### IV. DID THE TRIAL COURT ERR IN EXCLUDING THE TESTIMONY OF THE DEFENSE'S WITNESS VICKI PARKER AND IN RESTRICTING FISHER'S TESTIMONY REGARDING A MOTIVE TO LIE ON THE PART OF STATE'S WITNESSES?

¶27. Fisher also assigns as error the trial court's exclusion of defense witness Vicki Parker, Deputy Chancery Clerk of Jackson County, and his own testimony regarding a motive to lie by the prosecution's witnesses. Parker was to testify that Fisher had signed an affidavit to have his wife committed. The State moved to prohibit her testimony based on improper notice and relevancy. The trial court granted the motion.

¶28. A trial judge enjoys a great deal of discretion as to the relevancy and admissibility of evidence. Unless the judge abuses this discretion so as to be prejudicial to the accused, the Court will not reverse this ruling. *Shearer v. State*, 423 So. 2d 824, 826 (Miss. 1982). The record indicates Parker's testimony would be cumulative, as Fisher himself testified that he tried to have Rhonda committed because of cocaine addiction and then dropped it. We find no abuse of discretion in this ruling.

¶29. The trial judge also refused to allow Fisher to testify concerning a custody dispute between Rhonda and him over their son. Fisher argues our recent decision in *McLemore v. State*, No. 92-CT-00463-SCT (February 5, 1996), as support for this position. McLemore sought to show evidence of bias and prejudice against him by officers of the sheriff's department. McLemore proffered that he would testify to the fact that officers already had a mind set of guilt as to him for murders occurring the same day. Because one of the murders occurred while McLemore was in custody, the officers may have had reason to lie about McLemore's participation in the second one in order to cover shoddy investigative procedures. McLemore did not seek to elicit such bias on cross-examination of the officers. We held that a party is entitled to present evidence as to bias and prejudice against him bythe state's witnesses, and this should be accomplished on cross-examination. However, this is not the only time a party can show these motives. *McLemore v. State*, No. 92-CT-00463-SCT, slip op. at 11-12. We further upheld McLemore's right to present such evidence through his own testimony. *Id.*

¶30. While we agree that McLemore supports Fisher's right to present evidence of bias and prejudice of the State's witnesses against him, a review of Fisher's proffer of testimonyindicates no abuse on the part of the trial judge in excluding this testimony. He proffered that his testimony would show a custody dispute between Rhonda, Eartha Mayes and him over the Fishers' child, Guidera. On cross-examination of Rhonda, testimony was elicited concerning this exact issue.

¶31. Evidence showing bias on the part of a witness is allowed for the purpose of effecting credibility of the witness. *Id.* at p. 8; *Cantrell v. State*, 507 So. 2d 325, 329 (Miss. 1987); *Sanders v. State*, 352 So. 2d 822, 824 (Miss. 1977). *McLemore* allows this evidence to come from a party as well as the actual witness. Fisher elicited the proffered testimony regarding bias from Rhonda on cross-examination. It would have been more prudent to allow the defendant to testify to his view of the bias. However, the evidence in regard to bias was developed from the testimony of the witness and was before the jury. Therefore, the failure to allow Fisher to also testify to it was not reversible error.

### V. DOES THE CAPITAL RAPE STATUTE VIOLATE THE SEPARATION OF POWERS DOCTRINE BECAUSE IT LEAVES THE JUDGE NO DISCRETION IN SENTENCING?

¶32. Fisher argues that the capital rape statute which requires the imposition of a death sentence or life imprisonment is a violation of the separation of powers doctrine. Specifically, he maintains that, although the legislature has the power to determine the potential penalty for a crime, it does not have the authority to remove the power of the judiciary to exercise discretion in sentencing. Fisher cites no authority for this position. He does recognize that the Court has determined a prosecutor's discretion in applying a habitual offender statute does not violate the separation of the executive and judicial branches, but argues that 1) the prosecutor's actions in using the statute did not amount to the power to sentence, and 2) that a prosecutor always has some selectivity in his or her approach to a case., whereas the judge does not under the capital rape statute. *Washington v. State*, 478 So. 2d 1028 (Miss. 1985).

¶33. Fisher's argument is without merit. The power to determine appropriate punishment for criminal acts lies in the legislative branch. In *Washington,* the Court stated that the fixing of punishment in criminal cases is a question of legislative policy. *Washington*, 478 So. 2d at 1031. *See also Jackson v. State*, 551 So. 2d 132, 149 (Miss. 1989) (where the Court stated that the imposition of a sentence upon conviction is a matter within the discretion of the circuit court, subject only to statutory and constitutional limitations.).

¶34. The U.S. Supreme Court has ruled similarly on this issue finding no inherent power of judicial discretion in sentencing. *Mistretta v. United States*, 488 U.S. 361, 364 (1989). In so ruling, the Supreme Court stated, "[h]istorically federal sentencing- the function of determining the scope and extent of punishment- never has been thought to be assigned by the Constitution to the exclusive jurisdiction of any one of the three Branches of Government." *Id.* In *Mistretta*, the Supreme Court also recognized that Congress has the power to fix the sentence for a federal crime and the scope of judicial discretion with respect to a sentence is subject to congressional control. *Id.* (citing *United States v. Wiltberger*, 5 Wheat. 76 (1820) and *Ex parte United States*, 242 U.S. 27 (1916)).

¶35. Article 1, section 1 of the Mississippi Constitution distributes the governmental powers in similar fashion to Articles I-III of the U.S. Constitution. Thus, using the *Mistretta* reasoning, the legislature has complete control over sentencing, including judicial discretion in sentencing. In addition, we note that other states have found no violation of separation of powers in statutes that mandate certain sentences. *See State v. Waits*[2], 786 P.2d 1067, 1071 (1989); *State v. Lowe*[3], 661 S.W.2d 701, 703 (Tenn. 1983).

¶36. Clearly, there is no violation of the separation of powers doctrine by the mandate of the statute. This Court has already recognized in *Washington* that the determination of punishments in criminal

cases is a question of legislative policy. In light of the instant case, it has become necessary to "spell it out"; there is no violation of the separation of powers doctrine by statutorily mandated penalties for crimes.

¶37. We reverse and remand for a new trial consistent with this opinion.

**¶38. REVERSED AND REMANDED.**

**PRATHER AND SULLIVAN, P.JJ., McRAE AND MILLS, JJ., CONCUR. LEE, C.J., CONCURS IN RESULT ONLY. BANKS, J., CONCURS WITH SEPARATE WRITTEN OPINION JOINED BY PRATHER, P.J. SMITH, J., CONCURS IN PART AND DISSENTS IN PART WITH SEPARATE WRITTEN OPINION JOINED BY ROBERTS, J.**

### BANKS, JUSTICE, CONCURRING:

¶39. I agree with the result and all that is said with respect to the issues in this case. If our published rules of evidence or procedure are to be amended, however, I believe that it should ordinarily be done through a process which includes a petition to amend, notice and opportunity for a hearing. It is out of recognition of the sense of urgency felt by the court to correct an apparent oversight in not conforming the marital privilege rule to the spousal competency rule with respect to offenses against children that I do not object to the procedure here used to effectuate a rules change.

**PRATHER, P.J., JOINS THIS OPINION.**

### SMITH, JUSTICE, CONCURRING IN PART AND DISSENTING IN PART:

¶40. I concur with the majority on all issues except Issue 4. I readopt my dissent in ***McLemore v. State***, 92-CA-00463-SCT (February 5, 1996). Certainly wide latitude is to be allowed to show bias, motive, or prejudice, however, this should be attempted during cross-examination. I respectfully concur in part and dissent in part.

**ROBERTS, J., JOINS THIS OPINION.**

## ON MOTION FOR REHEARING

### MILLS, JUSTICE, SPECIALLY CONCURRING:

¶41. I concur in the majority vote to deny the motion for rehearing based upon my understanding that this rule, as amended, will be applied in the retrial of this cause. The amendment at issue affects a rule of evidence and applies to a privilege, not a right. Therefore, I would go further, in the interest of judicial economy, and common sense, and clarify the prior opinion to state that the amended rule is applicable at the retrial of this cause in the trial court.

**ROBERTS AND SMITH, JJ., JOIN THIS OPINION.**

1. As of May 1, 1995, this became Rule 7.06 of the Uniform Circuit and County Court Rules, however, it contains the same text as Rule 2.05.

2. In *Waits*, the defendant argued that the AZ statute violated the constitution by mandating a single sentence for a violation of the statute, thereby divesting the judiciary of its constitutionally granted discretion with respect to imposing sentence for a criminal offense. The AZ Court rejected the separation of powers argument stating that defining crimes and suitable punishments for those who commit them is a legislative function.

3. In *Lowe*, the TN Court found that minimum mandatory sentencing provisions of the statute governing DWIs did not violate the separation of powers doctrine of the TN Constitution. The Court stated, "[t]he setting of punishment is a well recognized legislative function and mandatory sentencing provisions do not constitute an unconstitutional encroachment on the power of the judiciary." *Lowe*, 661 S.W.2d at 703. (quoting *Lavon v. State*, 586 S.W.2d 112 (Tenn. 1979).