IN THE SUPREME COURT OF MISSISSIPPI

NO. 97-KA-00692-SCT

*ANTHONY MELTON, a/k/a ANTHONY P. MELTON*

*v.*

*STATE OF MISSISSIPPI*

| | |
|---|---|
| DATE OF JUDGMENT: | 01/23/97 |
| TRIAL JUDGE: | HON. JOHN B. TONEY |
| COURT FROM WHICH APPEALED: | RANKIN COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | WILLIAM ANDY SUMRALL |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL |
| | BY: JEAN SMITH VAUGHAN |
| DISTRICT ATTORNEY: | JOHN KITCHENS |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| DISPOSITION: | AFFIRMED - 11/12/98 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | 12/3/98 |

**BEFORE SULLIVAN, P.J., MILLS AND WALLER, JJ.**

**MILLS, JUSTICE, FOR THE COURT:**

**STATEMENT OF THE CASE**

¶1. Anthony Melton was convicted of murder by a Rankin County jury and sentenced to life imprisonment in the custody of the Mississippi Department of Corrections. Aggrieved, Melton brings this appeal, assigning as error the following:

**I. WHETHER THE TRIAL COURT ERRED IN ALLOWING THE IDENTIFICATION OF A CAR BY TONYA BROWN AND ADMISSION OF PICTURES OF THE AUTOMOBILE OVER MELTON'S OBJECTION.**

**II. WHETHER THE TRIAL COURT ERRED IN ALLOWING RONNIE PENNINGTON TO TESTIFY AS TO THE STATEMENTS OF JULIE CARPENTER OVER MELTON'S OBJECTION.**

**III. WHETHER THE TRIAL COURT ERRED IN OVERRULING MELTON'S MOTION IN LIMINE REGARDING DEBBIE GLENN'S TESTIMONY.**

# IV. WHETHER THE JURY VERDICT WAS AGAINST THE OVERWHELMING WEIGHT OF THE EVIDENCE.

## STATEMENT OF THE FACTS

¶2. Chris and Julie Carpenter had been married for eight years in 1996 and had three children. They were experiencing marital problems and Julie had been away from home in the weeks preceding Chris Carpenter's murder. They lived in Rankin County, Mississippi, within 150 yards of Anthony Melton's trailer. Anthony Melton borrowed a .25 caliber automatic gun from Chester Glenn during the first week of February 1996, ostensibly to shoot a dog which had been harassing children in the neighborhood. There were three rounds in the gun when Glenn loaned it to Melton.

¶3. Chris Carpenter was murdered February 8, 1996. He was shot three times with Glenn's .25 caliber automatic gun. He was also strangled with a nylon rope which was recovered with the body. There were two shots to his head and one shot to his back. His blood, a belt loop similar to one missing from his jeans, and his watch were found around 50 feet behind Melton's trailer.

¶4. Cheryl Twilley, a neighbor who lived a "stone's throw" away, heard two shots around 10:00 a.m. or 11:00 a.m. on the morning of the murder followed by a third shot a few minutes later. She testified the shots came from the direction of Anthony Melton's property.

¶5. Tonya Brown, a student on her way home from Pisgah High School, saw a maroon late model car which she later identified as Melton's car backed up to a dirt bank on Highway 43 in Rankin County around 2:00 p.m. There were two people standing outside the car, including a white man fitting Melton's description.

¶6. A day later, Roy McCrory found Chris Carpenter's body behind the dirt bank near the side of Highway 43 in Rankin County. A rope used to strangle Carpenter was found along with a blanket covering a large portion of Carpenter's body. The Rankin County Sheriff's Department could not identify the body. Around lunch that day or the next day, Anthony Melton returned the cleaned gun he had borrowed from Chester Glenn. The three rounds left in the gun by Glenn had been used.

¶7. On February 13, five days after the murder, Julie Carpenter reported her husband missing and his body was identified later that day by Rachel Callahan, Julie's friend and co-worker. Bill Carpenter, Chris Carpenter's father, saw Melton's car in Julie and Chris Carpenter's driveway on Sunday, two days before Julie Carpenter reported her husband missing.

¶8. The school bus driver for the Carpenter children took them to Melton's residence instead of their home on the day after the murder occurred and again on the day before Julie Carpenter reported her husband missing. The bus driver testified that parental consent was given, as required, before leaving the children at a location other than their own residence.

¶9. Rachel Callahan, a friend and co-worker of Julie Carpenter, testified that Melton and Julie Carpenter were "going together" in the weeks prior to the murder. Callahan and her boyfriend, Robert Britton, recounted Melton's oral accounts and Julie's approval of ways he could kill Chris Carpenter. Melton described how he could kill Chris Carpenter during a card game at Callahan's home where Melton, Julie

Carpenter, Callahan, and Britton were present. Britton testified Melton and Julie had been at Callahan's house together at least twice while he was present. Additionally, Callahan testified she did not know a gun was used in the murder until Melton asked her whether or not prints were lifted from the gun.

¶10. John Murphy, a cell mate of Melton, testified that Melton confessed to the murders while awaiting trial. Melton contends Murphy's statements were made only in an attempt to receive special treatment or a plea bargain. However, Murphy testified that he had received no "favors" because of his testimony.

¶11. At trial, Melton disputed his location on the day of the murder. Nancy Williams, a neighbor, testified he was at her house working on her frozen pipes the day of the murder and two other days that week from 7:30 a.m. until lunch. The appellant's brother, Terry Melton, also testified that the appellant visited him at work from around 12:30 p.m. until just before 2:00 p.m. on February 8, 1996.

## I. WHETHER THE TRIAL COURT ERRED IN ALLOWING THE IDENTIFICATION OF MELTON'S CAR BY TONYA BROWN AND ADMISSION OF PICTURES OF THE AUTOMOBILE OVER MELTON'S OBJECTION.

¶12. Melton contends there was a violation of his Sixth Amendment right to a fair trial when Tonya Brown was allowed to identify his car. He objects to her identification at the police station where she was shown a picture of the car, and he objects to her identification of the car at the impound lot. Melton asserts the car was the only auto on the lot when Brown identified it while Brown testified there were several cars but the car she identified was the only maroon one.

¶13. The state contends the appellant failed to raise this error in his motion for a new trial and is thus procedurally barred from raising it now. Alternately, the state contends the defendant cites no authority for his position that identification of cars should be afforded the same procedural safeguards as identification of suspects. Finally, the state contends the identification of Melton's car did not deny his right to a fair trial. Tonya Brown had an adequate opportunity to view the car on the day it was parked near the dirt pile. She testified that she noticed the car because it was similar to one driven by her boyfriend and no doubt she spent time trying to distinguish the car from her boyfriend's car. She described it to police before being shown a photo of the car or identifying it at the impound lot.

¶14. In prescribing which errors must be included in a motion for a new trial to be preserved on appeal, this Court has held, "[a]ll new matters, no[t] shown of record and not merely cumulative irregularities, mistakes, surprises, misconduct and newly discovered evidence" must be brought to the attention of the trial judge before the Court is allowed to review them. *Jackson v. State*, 423 So.2d 129 (Miss. 1982)(quoting *Colson v. Sims*, 220 So.2d 345, 346 n.1 (Miss. 1969)). Counsel for Melton objected during the trial to this evidence; therefore it was a matter of record and it was not necessary that he list it in his motion for a new trial. " [I]t is not necessary to make a motion for a new trial grounded upon errors shown in the official transcript of the record. . . ." *Colson*, 220 So. 2d at 346 n.1.

¶15. We have held an appellant's failure to cite any authority in support of assignments of error precludes this Court from considering these issues on appeal. *Grey v. Grey*, 638 So.2d 488, 491 (Miss. 1994) (citing *Matter of Estate of Mason v. Fort,* 616 So.2d 322, 327 (Miss.1993)). While failure to cite authority should not be considered a procedural bar, this Court is not bound to consider an unsupported argument.

¶16. In *Ohio v. Roberts*, which Melton cites, the United States Supreme Court allowed the testimony of a witness who did not appear at defendant's trial when the witness had testified at the preliminary hearing. *Ohio v. Roberts*, 448 U.S. 56 (1980). She had been subject to questioning that was the equivalent of cross-examination and was unavailable to appear at trial. *Id. Ohio* does not address identification, the very issue for which Melton cites it as support. The United States Supreme Court has dealt with identification and the attachment of Sixth Amendment rights in several cases. *See* *United States v. Wade*, 388 U.S. 218 (1967); *Kirby v. Illinois*, 406 U.S. 682 (1972). However, this line of cases addresses the identification of human beings not automobiles. There is no rational basis for Melton's argument and we find it without merit.

## II. WHETHER THE TRIAL COURT ERRED IN ALLOWING RONNIE PENNINGTON TO TESTIFY AS TO THE STATEMENTS OF JULIE CARPENTER OVER MELTON'S OBJECTION.

¶17. Melton asserts Officer Ronnie Pennington's testimony should have been limited to what he personally observed or did. He asserts that Pennington's testimony as to what Julie Carpenter said was hearsay and should not have been allowed by the trial court. Melton objects to testimony by Pennington which relates to Julie Carpenter's inconsistent statements regarding her relationship with Melton. Pennington testified Julie Carpenter first stated she knew Melton only vaguely then later admitted they had a sexual relationship.

¶18. The state contends this matter has not been preserved for appeal since the judge's reasoning for overruling the appellant's objection is not part of the record. In the alternative, the state submits any harm was cured by rephrasing the question to limit the testimony only to the inconsistent statements of Julie Carpenter.

¶19. This Court has addressed a similar situation in which the appellant specified all "in chamber conferences" were to be included on appeal and nevertheless a bench conference on a hearsay ruling was not included in the record. We held:

> Under the circumstances, we perceive no grounds for charging [the appellant] and his attorney with responsibility for the fact that the court reporter did not take down what transpired. . . . On the other hand, we do not think it appropriate that we invent matters not fairly within the record. We approach the critical portion of the trial with a common sense awareness of how at the trial level court and counsel proceed regarding objections of the sort here made.

*Lambert v. State*, 574 So.2d 573, 577-578 (Miss. 1990)(citation omitted).

¶20. In this case, Melton noted that all "objections, arguments, responses and rulings by the Court" should be included in the record for appeal. At the first possible moment, counsel for Melton objected to "hearsay" and was sustained. However, upon renewing his motion later in the testimony, counsel for the appellant was overruled after a bench discussion which had been designated "Off The Record."

¶21. The distinction between the two rulings appears to be premised on the fact that Pennington was exposing inconsistent statements of Julie Carpenter. This sort of testimony might have been allowed under Miss. Rule of Evid. 613(b) as impeachment evidence if Julie Carpenter had been a witness and was afforded an opportunity to explain the inconsistency. However, Julie Carpenter was not a witness in this trial. Therefore, Pennington's statements fall into the category of hearsay under Miss. Rule of Evid. 802. His

testimony does not come within an exception to the hearsay rule enumerated in Rule 803 and allowing this testimony was error.

¶22. Melton asserts that admitting hearsay constitutes reversible error. He cites *Balfour v. State*, 598 So.2d 731 (Miss. 1992). However, the defendant's case in *Balfour* was reversed for violations of the Fifth, Sixth and Fourteenth amendments. *Id.* at 756. Our inquiry is whether the error merits reversal. Did the admission of this evidence abridge Melton's right to a fair trial? *Lambert*, 574 So.2d at 578. Pennington's testimony served to impeach Julie Carpenter's character for truthfulness. It may have also lent credence to the state's theory that Julie Carpenter and Melton were having an affair, showing Melton's motive for murdering Chris Carpenter. The testimony of Julie Carpenter's friend Rachel Callahan and her boyfriend Robert Britton brought out similar facts. They stated that Melton and Julie were "going together." Additionally, Bill Carpenter's testimony that his son and Julie had been having trouble and that he saw Melton's car in the couple's driveway reinforced evidence of a relationship. The bus driver's testimony that she was instructed to drop the Carpenter children at Melton's house in the days before Julie reported Chris missing did the same.

¶23. In addition to the similar testimony, there was sufficient evidence to convict Melton without Pennington's account of Julie Carpenter's statements. John Franovich, a forensic scientist with the Mississippi Crime Laboratory, testified that the bullets recovered from Chris Carpenter's body were fired from the gun Melton borrowed from Mr. Glenn. Blood evidence fifty feet behind Melton's trailer pinpointed the site of Carpenter's death, and Tonya Brown identified Melton's car as the one she saw later the day of the murder backed up to the bank where the body was found. She also testified a man fitting Melton's description was standing near the car. Finally, John Murphy, a cell mate of Melton, testified Melton confessed to the murder while awaiting trial. The jury would not have returned a different verdict had it not heard the hearsay testimony in issue; therefore, the error in admitting this testimony is insufficient to require reversal.

## III. WHETHER THE TRIAL COURT ERRED IN OVERRULING THE DEFENDANT'S MOTION IN LIMINE REGARDING DEBBIE GLENN'S TESTIMONY.

¶24. Melton contends the trial court should have sustained his motion in limine regarding the testimony of Debbie Glenn since he contends all Ms. Glenn's knowledge about the events in question came from her husband, Chester Glenn. The state argues this motion is not preserved on appeal and is therefore barred. The state also asserts that no hearsay testimony was allowed from Debbie Glenn except one sentence which was remedied by an instruction from the judge. The state contends there was no error by the trial judge.

¶25. A trial judge enjoys wide discretion with regard to the relevancy and admissibility of evidence. *Fisher v. State,* 690 So.2d 268, 274 (Miss. 1996). We will not reverse a trial judge's evidentiary ruling unless the judge commits an abuse of discretion prejudicial to the party bringing the motion. *Fisher*, 690 So.2d at 274.

> [Motions in limine] should be granted only when the trial court finds two factors present: the evidence in question will be inadmissible at trial under the rules of evidence and that mere offer, reference, or statements made during trial concerning the evidence will tend to prejudice the jury.

*Hopkins v. State*, 639 So.2d 1247, 1254 (Miss.1993).

¶26. A contemporaneous record of the motion in limine by the appellants was not preserved in this case. However, it was later made a part of the record. While any testimony by Ms. Glenn which simply reiterated her husband's testimony should be excluded as prejudicial, it is clear that she did have first-hand knowledge of some of the events around the time her husband loaned the gun in question to Melton.

¶27. She described where the gun was kept. She testified it was last fired six months prior to the week of February 5, 1996. She personally knew there were three rounds left in the gun prior to the week of February 5, 1996, and she personally discovered the gun was missing that week. She also saw her husband walking down the hall with the gun. All objections by appellants to Ms. Glenn's testimony were sustained and in one instance an instruction was given to the jury to disregard what she said. The trial judge instructed the parties that the hearsay objection would be sustained unless Ms. Glenn could testify based on her own knowledge. Melton suffered no prejudice since the trial judge carefully protected the testimony to avoid entry of inadmissible hearsay. The judge did not abuse his discretion in denying the appellant's motion in limine and allowing Ms. Glenn to testify. This assignment of error is without merit.

## IV. WHETHER THE JURY VERDICT WAS AGAINST THE OVERWHELMING WEIGHT OF THE EVIDENCE.

¶28. Melton contends the jury's verdict was against the overwhelming weight of the evidence and therefore the court erred in failing to grant any of the following: a directed verdict motion, a preemptory instruction for acquittal, a motion for judgment notwithstanding the verdict, or a motion for a new trial. In opposition, the state retorts that there was ample support for the jury's verdict and it should not be overturned.

¶29. It is well settled that our authority to interfere with a jury's verdict is very limited. *Benson v. State*, 551 So.2d 188, 192-93 (Miss. 1989). This Court has held, "To determine whether a jury verdict is against the overwhelming weight of the evidence, [this Court] view[s] all of the evidence in the light consistent with the verdict and we give the State all favorable inferences which may be drawn from the evidence." *Strong v. State*, 600 So.2d 199, 204 (Miss. 1992) (citing *Corley v. State,* 584 So.2d 769, 773 (Miss 1991)). We will reverse only when the trial court has abused its discretion in refusing to grant a new trial. *Strong*, 600 So.2d at 204. We will only grant a new trial when allowing the verdict to stand would "sanction an unconscionable injustice." *Harris v. State*, 527 So.2d 647, 649 (Miss. 1988)(quoting *Groseclose v. State*, 440 So. 2d 297, 300 (Miss. 1993)).

¶30. The primary basis for the appellant's contention here rests on the alibi evidence provided by Nancy Williams and Terry Melton. Additionally, the appellant cites the circumstantial nature of the physical evidence. Finally, the appellant refers to Chester Glenn's uncertainty about the date the gun was returned. It is clear that the jury is the only arbiter of the credibility of witnesses. *Collier v. State*, 711 So.2d 458, 462 (Miss. 1998). When asked to reverse on the ground of inconsistencies or contradictions in testimony, we have held this is clearly in the jury's province and flatly refused. *Id.* "Jurors are permitted, indeed have the duty, to resolve the conflicts in the testimony they hear. . . . It is enough that the conflicting evidence presented a factual dispute for jury resolution." *Groseclose v. State*, 440 So.2d 297, 300 (Miss. 1983) (quoting *Gandy v. State,* 373 So.2d 1042, 1045 (Miss. 1979)). Since the credibility of the testimony of Chester Glenn, Nancy Williams, and Terry Melton was a decision for the jury, the Court will not reverse the jury's verdict. Finally, the appellant claims the physical evidence is not strong enough to warrant the jury's finding of guilt beyond a reasonable doubt. In reviewing the record in the light most favorable to the state, it is clear there was an evidentiary basis for the guilty verdict. Therefore, the verdict was not against the

overwhelming weight of the evidence.

## CONCLUSION

¶31. Melton presented no basis for error in the identification of his automobile. While the testimony of Ronnie Pennington recounting Julie Carpenter's statements was hearsay, it is clear the jury would have reached the same verdict without this testimony. No motion in limine was required for the testimony of Debbie Glenn since she was able to testify to facts based on her own knowledge. Finally, the verdict of the jury was not against the overwhelming weight of the evidence presented. There was no reversible error in the trial court's proceedings and so we hereby affirm the jury's verdict.

¶32. **CONVICTION OF MURDER AND SENTENCE OF LIFE IMPRISONMENT IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS AFFIRMED.**

**PRATHER, C.J., SULLIVAN AND PITTMAN, P.JJ., BANKS, ROBERTS, SMITH AND WALLER, JJ., CONCUR. McRAE, J., CONCURS IN RESULT ONLY.**