758 So.2d 1063 (2000)
Paul BUTLER, Appellant,
v.
STATE of Mississippi, Appellee.
No. 1998-KA-01478-COA.
Court of Appeals of Mississippi.
April 11, 2000.
*1064 Rebecca G. Taylor, Attorney for Appellant.
Office of the Attorney General by Jeffrey A. Klingfuss, Attorney for Appellee.
BEFORE McMILLIN, C.J., IRVING, AND THOMAS, JJ.
IRVING, J., for the Court:
¶ 1. Paul Butler was convicted in Lincoln County Circuit Court of armed robbery, aggravated assault and conspiracy to commit armed robbery. He was sentenced to serve concurrently, a term of thirty-five years for armed robbery, twenty years for aggravated assault and five years for conspiracy. Butler was ordered to serve the first twenty-five years in the custody of the Mississippi Department of Corrections and the remaining ten years on post release supervision. Additionally, he was ordered to pay full restitution to the victim, $500 in attorney fees, court costs, and to obtain his GED while in the penitentiary. Aggrieved by his conviction and sentence, Butler presents two issues for our review. The statement of issues is recited verbatim from his brief
A. THE TRIAL COURT ERRED WHEN IT ALLOWED HEARSAY *1065 EVIDENCE BY OFFICER BRUCE JACKSON TO BE PRESENTED INTO EVIDENCE.
B. THE JURY'S VERDICT IS AGAINST THE OVERWHELMING WEIGHT OF THE EVIDENCE.
Finding no reversible error, we affirm.

FACTS
¶ 2. On Friday, January 9, 1998, Wayne Boyte, owner of the Fish Fry restaurant, was robbed and assaulted. Boyte testified that as he exited his restaurant, he proceeded to his truck with bank bag in hand, and before he could get to his truck, someone jumped from the front of his pickup and lunged toward him. As Boyte struggled for the bag with one attacker, another attacker hit him in the head twice, and he was forced to let go of the bag. The bag contained cash and checks. Boyte stated that his employees, Jacqueline Johnson, David Redd, and Jason Diggs were inside the restaurant as the events transpired. Boyte stated that he did not see his attackers' faces.
¶ 3. Jacqueline Johnson testified that on the Tuesday night before the robbery, Butler and Richard Ball, Butler's co-conspirator, met at her house to discuss plans to rob the Fish Fry. Johnson stated that she did not know the details of the robbery. After Butler and Ball discussed their plans, they asked Johnson to tell David Redd that they wanted to talk to him. Johnson testified that on the following day, she told Redd to pick her up after work on Thursday; however, he did not show. Johnson testified that on Thursday night, the night before the robbery, Butler and Ball met again at her house. David Redd was not present. Johnson testified that Butler and Ball told her that they had met with Redd and that Redd provided them with the necessary details to rob the restaurant.
¶ 4. Richard Ball testified that while he and Butler were visiting Johnson at the Fish Fry on the Tuesday afternoon before the robbery, Butler stated that "this would be a good place to get." Ball stated that after he and Butler left the restaurant they continued to discuss the possibility of robbing the Fish Fry. Ball stated that when Johnson came home, they discussed it for about five minutes with her, and she stated that she would ask Redd to come by the house to discuss the plans.
¶ 5. Ball testified that on the night of the robbery, he and Butler attended two parties. At the second party, Ball ran into Kendric, his nephew. Ball testified that he and Butler needed a ride to the area where the Fish Fry was located; therefore, Butler approached George Evans and asked him for a ride. When they left the party, five persons were in the car, Ball, Butler, George Evans, Greg Givens and Kendric. Before reaching the vicinity of the Fish Fry, Evans stopped at a store to get gas. While Evans got gas, Butler went to the phone. Ball testified that Butler did not state who he was calling; however, on return to the vehicle, Butler stated that "it was all good about the Fish Fry." Givens also testified to seeing Butler on the phone.
¶ 6. Ball testified that Evans dropped Butler, Ball and Kendric off at a location near the restaurant. Ball stated that they asked Evans to wait on them for thirty minutes. Ball testified that as they walked towards the Fish Fry, he told Kendric to wait at the bushes. Ball and Butler proceeded towards the Fish Fry, and once there, they hid in a shed behind the building and waited. While they waited, Butler found a pipe with a diaper wrapped around the end. Ball stated that when Boyte came out, he rushed Boyte and grabbed the bag. Ball stated that he and Boyte tussled over the bag, but Ball finally gained control over the bag and began to run. Ball did not see Butler hit Boyte. Ball stated that as he was running, he saw Butler pass him, and since Butler could run faster, he handed the bag to Butler. When they returned to the car, Kendric was already sitting in the car. Ball testified *1066 that they returned to Johnson's apartment to split the money.
¶ 7. Richard Ball pled guilty to armed robbery and conspiracy to commit robbery. Jacqueline Johnson and Kendric Ball pled guilty to accessory after the fact. Ball testified that Givens and Evans had no knowledge of the robbery plans. Givens and Evans both testified that they did not have any knowledge of the robbery plans; however, they did testify to seeing Ball and Butler running from the direction of the restaurant.

ANALYSIS OF THE ISSUES PRESENTED

I. Did the trial court err when it allowed hearsay evidence by Officer Bruce Jackson to be presented into evidence?
¶ 8. Butler complains that the following statement made by one of the investigating officers, Officer Jackson, amounts to hearsay:
Q. And did you [Officer Jackson] determine as to what happened there that night?
A. Yes, Sir. Mr. Boyte had explained that as he came out to his truck, someone had jumped him, grabbed the money bag, and they got in a tussle. And he went down to the ground, was still hanging on to the money bag. And at some point he was hit. He said he looked around to try to get his head in a different location and he was struck again. At that point he turned the money bag loose and two subjects ran away.
¶ 9. Over the objection of Butler, Officer Jackson's statement was allowed into evidence. The officer's statement, however, does not amount to hearsay. "To constitute hearsay, extra-judicial words must by some means present a statement, declaration, or assertion introduced for the purpose of proving the truth of the matter contained in or asserted by the item or thing." Swindle v. State, 502 So.2d 652, 658 (Miss.1987). Further the Mississippi Supreme Court has stated that if the significance of a statement is simply that it was made and there is no issue about the truth of the matter asserted, then the statement is not hearsay. Parker v. State, 724 So.2d 482, 484 (Miss.App.1998). In the case sub judice, the out-of-court statement made by Boyte was not admitted for the purpose of proving the truth of the assertion made, but to explain the steps taken by Officer Jackson to investigate the incident. The truth of the statement by Boyte to Jackson was not in issue.
¶ 10. The Mississippi Supreme Court has held that admitting out-of-court statements made to the police during the course of their investigations is permissible. In so holding, the Court stated that "[i]t is elemental that a police officer may show that he has received a complaint, and what he did about the complaint without going into details of it." Swindle, 502 So.2d at 658. In Swindle, a police officer testified about a tip received from an informant. The Court held that a police officer's testimony about a tip received from an informant is admissible to the extent required to show why an officer acted as he did and was at a particular place at a particular time. Id. at 658.
¶ 11. The State produced testimony from Boyte to explain the actual events of the robbery. Officer Jackson's testimony was merely adduced to lay a predicate in order to discuss the officer's investigative actions. Through the officer's investigation, he determined that Boyte had been hit. From this determination, the officer was able to find the weapon used in the robbery. It was completely allowable for the court to admit this testimony. Moreover, the statement made by Officer Jackson did not implicate Butler because the statement given Officer Jackson by Boyte indicated that Boyte did not know who hit him. The trial court, therefore, did not err in allowing the statement.

*1067 II. Was there ample legally sufficient evidence of such weight and credibility to support the jury verdicts of guilty?

¶ 12. Butler argues that the trial court erred by refusing to grant his motion for new trial because the jury's verdict was against the overwhelming weight of the evidence. Butler claims that the testimony of Richard Ball and Jacqueline Johnson was inconsistent and to allow the verdict to stand would be an unconscionable injustice.
¶ 13. Our authority to interfere with a jury's verdict is very limited. Melton v. State, 723 So.2d 1156, 1161 (Miss.1998). To determine whether a jury verdict is against the overwhelming weight of the evidence, we must view all of the evidence in the light consistent with the verdict and give the State all favorable inferences which may be drawn from the evidence. Melton, 723 So.2d at 1161. When we are asked to reverse on the ground of inconsistencies or contradictions in testimony, we have held that this is clearly in the jury's province and flatly refused. Id. We will reverse only when the trial court abused its discretion in refusing to grant a new trial. Id. We will only grant a new trial when allowing the verdict to stand would sanction an unconscionable injustice. Id.
¶ 14. At trial, Richard and Jacqueline testified that Butler conspired with them and participated in the crime. Richard also testified that Butler shared in the spoils of the crime. The State produced evidence that Boyte was beaten with a diaper-covered pipe. Richard testified that the diaper-covered pipe was in Butler's possession. Evans and Givens testified to dropping Richard, Kendric and Butler in the vicinity of the restaurant and to seeing them running from the direction of the restaurant after the robbery. The jury considered this evidence and returned the verdict against Butler. We cannot say that the trial judge abused his discretion in not granting Butler a new trial, as the evidence of Butler's guilt was overwhelming.
¶ 15. THE JUDGMENT OF THE LINCOLN COUNTY CIRCUIT COURT FINDING APPELLANT GUILTY OF COUNT I, ARMED ROBBERY, AND SENTENCE OF THIRTY-FIVE (35) YEARS; COUNT II, AGGRAVATED ASSAULT, AND SENTENCE OF TWENTY (20) YEARS; COUNT III, CONSPIRACY TO COMMIT ARMED ROBBERY, AND SENTENCE OF FIVE (5) YEARS TO RUN CONCURRENT ON ALL COUNTS; TO SERVE THE FIRST TWENTY-FIVE (25) YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS WITH THE LAST (10) YEARS TO BE SERVED ON POST RELEASE SUPERVISION; AND FULL RESTITUTION TO THE VICTIM, IS AFFIRMED. COSTS OF THIS APPEAL ARE ASSESSED TO LINCOLN COUNTY.
McMILLIN, C.J., KING AND SOUTHWICK, P.JJ., BRIDGES, LEE, MOORE, PAYNE, AND THOMAS, JJ., CONCUR.