BRIDGES, P.J.,
for the Court.
¶ 1. On behalf of her son, Cody, Joan Brumfield sued Dr. LeDon Langston for medical malpractice. A jury sitting before the Pike County Circuit Court returned a verdict for Dr. Langston. Cody filed a motion for JNOV or, alternatively, for new trial. The circuit court denied Cody’s motions. Aggrieved, Cody appeals and asserts the following issues:
I.THE TRIAL COURT COMMITTED REVERSIBLE ERROR BY PREVENTING THE PLAINTIFF FROM CROSS-EXAMINING THE DEFENDANT IN THE PRESENCE OF THE JURY ABOUT MID-FORCEPS DELIVERY AND ALTERED MEDICAL RECORDS.
II. THE TRIAL COURT COMMITTED REVERSIBLE ERROR BY ALLOWING CUMULATIVE TESTIMONY FROM EXPERT WITNESSES ON THE ISSUES OF LIABILITY, CAUSATION, AND INJURY OVER THE PLAINTIFF’S OBJECTIONS.
III. THE TRIAL COURT COMMITTED REVERSIBLE ERROR BY DENYING PLAINTIFF’S MOTION FOR A NEW TRIAL.
¶ 2. Finding no error, we affirm.
FACTS
¶ 3. Cody Brumfield was born on May 19, 1989. Cody’s mother, Joan, experienced labor complications during delivery. In particular, Cody’s shoulders lodged behind Joan’s pelvis. The medical community uses the term “shoulder dystocia” to describe that event.[1] Dr. LeDon Langston attended Cody’s delivery. Dr. Langston dislodged Cody’s shoulder from Joan’s pelvis and Cody arrived into this world without further complication. However, Cody was born with a damaged right arm. At that time, it was unknown whether Cody’s arm would develop normally. Time would reveal that Cody had a condition known as Erb’s Palsy. Erb’s Palsy occurs when the cervical nerves in an unborn baby’s shoulder stretch, resulting in nerve damage. The condition manifests as an underdeveloped arm.
*50 ¶ 4. In May of 1997, Cody filed Ms complaint through Joan. In his complaint, Cody alleged that Dr. Langston negligently caused him to suffer Erb’s Palsy. Dr. Langston denied that he was negligent. The matter proceeded to. trial before the Pike County Circuit Court.
¶ 5. At trial, Cody presented three witnesses. Joan testified that when she gave birth to Cody, she had high blood pressure and diabetes. Further, Dr. Langston used forceps to pull Cody down but did not ask her about a Cesarean delivery, commonly called a C-Section. Cody, a large baby, weighed nine pounds and fifteen ounces. Cody’s shoulder was black and blue, limp, and “twisted in.” Cody’s arm never got better, but he was able to use it some.
¶ 6. Cody called Dr. Bernadette Sherman to testify as an expert witness. Dr. Sherman consulted Cody’s medical records and opined on the process of Cody’s delivery. Dr. Sherman noted that Joan was a large patient. The presence of diabetes and high blood pressure made Joan a high-risk patient. During labor, Cody “stayed high.” That meant that Cody did not descend down the birth canal at the normal rate. Dr. Sherman testified that when a baby “stays high” a complication might result.
Dr. Sherman went on to testify that shoulder dystocia is not common but there are indicators of that risk. According to Dr. Sherman, diabetics have large babies. That Joan was a diabetic is why Cody’s shoulder stuck. Further, when a baby does not come down, a physician should perform a C-Section. Dr. Sherman concluded that Dr. Langston breached the standard of care when he performed a vaginal delivery instead of a C-Section.
¶ 7. On cross-examination, Dr. Sherman agreed that shoulder dystocia is always dangerous and cannot be predicted. Further, she admitted that a C-Section strategy is not a good way to prevent shoulder dystocia. Finally, Dr. Sherman stated that she had no criticism of how Dr. Lang-ston used forceps. Rather, her criticism is that they were used when a C-Section was appropriate.
¶ 8. Cody ended his case-in-chief after he testified on his own behalf. Dr. Lang-ston presented a motion for directed verdict, but the circuit court demed that motion. Dr. Langston then argued his casein-chief. He testified on his own behalf and followed up with an expert witness.
¶ 9. Dr. Langston testified as an expert witness. He testified that there are three types of vaginal delivery: (1) spontaneous delivery in which the mother needs no assistance; (2) vacuum delivery in which suction aids the baby’s descent through the birth canal; and (3) forceps delivery. When a forceps delivery is necessary, the forceps are applied to the baby’s head so that the mother does not have to push for long periods.
¶ 10. In Joan’s case, Dr. Langston testified that a C-Section was never necessary but he did use forceps to reduce the second stage of labor. Once Cody’s head delivered, Dr. Langston removed the forceps. Although a baby usually delivers easily at that point, Cody’s shoulders were larger than his head and Cody’s shoulders lodged behind Joan’s pelvis. Dr. Langston said that many complications can result once that happens. To free a baby who experiences this, a physician first applies pressure to the mother’s pubic bone. When Dr. Langston did, Cody did not dislodge. A physician’s second option is to increase the size of the birth canal. Likewise, that did not free Cody. Finally, a physician should apply the “McRobert’s procedure” by which the physician pushes the mother’s knees towards her chest. When Dr. Langston performed the McRo- *51 bert’s procedure, Cody dislodged and delivered. Dr. Langston testified that C-Section is a last resort. Especially in Joan’s case, due to Joan’s having signed documents by which she detailed that her faith as a Jehovah’s witness forbid the possibility of her receiving a blood transfusion under any circumstance, even if necessary to save her life.
1111. During cross-examination, Cody’s counsel attempted to question Dr. Lang-ston about some of Joan’s medical records in which Dr. Langston altered an entry detailing a “mid-forceps” delivery. Dr. Langston crossed out “mid-forceps” and wrote “low-forceps” instead. When Cody’s counsel attempted to ask Dr. Langston about the alteration, Dr. Langston’s attorney objected and the trial court excused the jury. After some debate, the court determined that according to Cody’s casein-chief, the issue was whether Dr. Lang-ston was negligent in performing a vaginal delivery instead of a C-Section.
¶ 12. Dr. Langston’s attorney argued that the line of questioning at issue inferred that Dr. Langston used forceps to attempt to pull Cody free after Cody’s shoulders became trapped. Further, the facts did not suggest that set of events. Rather, Dr. Langston pulled Cody down the birth canal and stopped after Cody’s head delivered. It was at that point that Cody’s shoulders lodged behind Joan’s pelvis. The circuit court concluded that because Cody had presented his case-in-chief and failed to assert that Dr. Langston was negligent in the manner he applied the forceps, it was improper to assert that such was the case during Dr. Langston’s case-in-chief.
¶ 13. After Dr. Langston concluded his testimony, he called Dr. James Martin as an expert witness. Dr. Martin testified that it was appropriate to deliver Cody vaginally. At that point, Cody’s counsel objected and argued that Dr. Martin’s testimony was cumulative and, accordingly, improper. The circuit court overruled the objection.
¶ 14. Dr. Martin went on to testify that predicting shoulder dystocia is impossible. However, he opined that Dr. Langston managed it appropriately and was not negligent. Finally, Dr. Martin testified that under the circumstances a C-Section would have been improper.
¶ 15. Following closing arguments, the jury deliberated for twenty-eight minutes and returned a verdict for Dr. Langston. Cody filed post-trial motions for JNOV, for new trial, and to amend the judgment. The circuit court overruled Cody’s motions. Cody brings his appeal before this Court and seeks resolution of three issues.
ANALYSIS
I. DID THE TRIAL COURT COMMIT REVERSIBLE ERROR BY PREVENTING THE PLAINTIFF FROM CROSS-EXAMINING THE DEFENDANT IN THE PRESENCE OF THE JURY ABOUT MID-FORCEPS DELIVERY AND • ALTERED MEDICAL RECORDS?
¶ 16. “The standard of review regarding the admission or exclusion of evidence is abuse of discretion.” Thompson Machinery Commerce Corp. v. Wallace, 687 So.2d 149, 152 (Miss.1997). In his first assignment of error, Cody argues that the trial court abused its discretion to admit or exclude evidence by preventing him from cross-examining Dr. Langston in the jury’s presence regarding mid-forceps delivery and altered medical records. The theory of Cody’s argument is that Dr. Langston used forceps to deliver a large baby that had not sufficiently reached a proper point in descending the birth canal. Further, because Cody was still “high” at *52 delivery, Dr. Langston negligently used a mid-forceps procedure to deliver Cody. Cody maintains that the trial court should have allowed cross-examination on these matters in the jury’s presence. Cody also argues that although he attempted to impeach Dr. Langston’s testimony by way of altered hospital records, the trial court chose not to allow it.
¶ 17. The trial court correctly recognized that the line of questioning was irrelevant. It was irrelevant because Cody’s argument, according to the expert testimony of Dr. Sherman, was whether Dr. Lang-ston should have delivered Cody by C-Section rather than some variation of vaginal delivery. The trial court correctly recognized that Dr. Sherman specifically testified that she had no criticism of the techniques used during delivery, including the application of forceps.
18. Even if the excluded testimony was admitted the testimony would not have changed the outcome of the trial. The excluded testimony involved a correction of Dr. Langston’s transcript of his dictated delivery notes. The correction was to indicate that the delivery was low-forceps rather than mid-forceps. Moreover, during Cody’s case-in-chief, no one testified that it was improper or fraudulent for Dr. Langston to correct the medical record. No one testified that delivery was by any other means than low-forceps. Even if the jury was to somehow conclude that the delivery was mid-forceps, no one testified that such delivery was a breach of the standard of care. Accordingly, this assignment of error is without merit.
II. DID THE TRIAL COURT COMMIT REVERSIBLE ERROR BY ALLOWING CUMULATIVE TESTIMONY FROM EXPERT WITNESSES ON THE ISSUES OF LIABILITY, CAUSATION, AND INJURY OVER THE PLAINTIFF’S OBJECTIONS?
¶ 19. Cody’s theory behind this assignment of error is that because Dr. Langston testified, as an expert witness, that he was not negligent, Dr. Martin’s expert testimony to the same effect should be excluded as cumulative. He cites the proposition that “[rjelevant evidence may be excluded if its probative value is substantially outweighed by the ... needless presentation of cumulative evidence.” M.R.E. 403; Evans v. State, 725 So.2d 613 (¶ 233) (Miss.1997).
¶ 20. A trial judge has a great deal of discretion as to the relevancy and admissibility of evidence. Id. at (¶ 232). Unless the trial judge abused his discretion and caused Cody prejudice, this Court will not reverse the judge’s ruling. Id. (quoting Fisher v. State, 690 So.2d 268, 274 (Miss.1996)).
¶ 21. Rule 403 allows a trial judge to use his discretion to exclude evidence if the evidence causes needless presentation of cumulative evidence. The subject testimony did not result in the needless presentation of cumulative evidence. Without question, Dr. Langston had the right to testify in his defense. The fact that he is able to testify as an occurrence witness does not change the fact that he is also qualified to testify as an expert witness. When counsel tendered Dr. Langston as an expert, Cody did not object. If Cody wanted to limit Dr. Langston to occurrence testimony, the proper method would have been to object to Dr. Langston offering expert testimony. The fact that a defendant who is able to testify as an expert offers the same testimony as his separate expert witness does not render the testimonial evidence needlessly cumulative. The jury needed to determine whether Dr. Langston was negligent. If they thought that Dr. Langston was biased *53 in Ms testimony, Dr. Martin’s testimony would aid in the jury’s resolution of the issue. If Cody wanted to prevent two experts from testifying that Dr. Langston was not negligent, an objection based on cumulative evidence was not the way to accomplish that goal. Accordingly, this issue lacks merit.
III. DID THE TRIAL COURT COMMIT REVERSIBLE ERROR BY DENYING PLAINTIFF’S MOTION FOR A NEW TRIAL?
 ¶ 22. In reviewing a trial court’s decision whether to grant a motion for new trial, this Court must accept as true the evidence that supports the verdict and will reverse only when convinced that the circuit court has abused its discretion in failing to grant a new trial. Watson v. State, 848 So.2d 203(¶ 34) (Miss.Ct.App.2003). The jury verdict should stand unless the evidence, as a whole, shows that no reasonable hypothetical juror could have found that Dr. Langston was not negligent. Starcher v. Byrne, 687 So.2d 737, 739 (Miss.1997). This Court must resolve all conflicts of evidence and determine all reasonable inferences from the testimony in Dr. Langston’s favor. Thompson, 687 So.2d at 151-52.
¶ 23. Dr. Langston’s testimony, as well as Dr. Martin’s was that Dr. Langston was not negligent. Moreover, portions of Dr. Sherman’s testimony suggested that Dr. Langston was not negligent in delivering Cody. Accordingly, a reasonable hypothetical juror heard sufficient evidence to determine that Dr. Langston was not negligent. As such, the trial court did not err by denying Cody’s motion for new trial.
¶ 24. THE JUDGMENT OF THE CIRCUIT COURT OF PIKE COUNTY IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
LEE, P.J., MYERS, CHANDLER, GRIFFIS, BARNES AND ISHEE, JJ., CONCUR. IRVING, J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY KING, C.J.

. In describing the events and arguments, this Court borrows heavily from the various witnesses’ testimony.