¶ 1. A Coahoma County jury found Kevin Moton guilty of burglary, kidnapping, and sexual battery. The jury sentenced Moton to life imprisonment in the custody of the Mississippi Department of Corrections (MDOC) for the kidnapping charge. The trial judge sentenced Moton to twenty years each for the burglary and sexual battery charges, to run concurrently with the life imprisonment sentence. Moton now appeals his convictions and sentences, raising issues regarding the weight and sufficiency of the evidence and whether the trial court erred in granting the State's *Page 1289 
motion in limine to exclude a used condom and the related crime lab report.
 SUMMARY OF FACTS AND PROCEDURAL HISTORY ¶ 2. On the night of September 17, 2004, Henry Wright was at home with his two children in Jonestown, Mississippi. Wright lived with his girlfriend, Shaneta Johnson, in a trailer. Johnson had asked Wright to meet her after work and walk her home, as she was working her first shift at night. Thus, at approximately 11:00 p.m., Wright left the two children, a two-year-old and an infant, sleeping in the trailer, locked all of the doors, and went to meet Johnson. On the way to Johnson's workplace, Wright met some neighbors and spoke to them. Additionally, Wright spoke with Moton, who lived in the neighborhood and was riding his bicycle down the street. Moton, who was seventeen years old at the time, is well known by Johnson and her family, who have known Moton since he was seven years old. Wright told Moton he was on his way to meet "his old lady," and they parted ways. When Wright and Johnson returned home, Johnson discovered that her two-year-old daughter, S.W., was missing; so she checked at her aunt's house down the street.[1] When they discovered S.W. was not there, Johnson and Wright began searching the entire neighborhood.
 ¶ 3. About an hour later, they found S.W. in an abandoned trailer in the couple's back yard about 100 yards from their own residential trailer. They had been calling S.W.'s name, and Wright heard her say "huh" from the abandoned trailer. Entering the trailer through a broken window, Wright found S.W. After exiting the trailer with S.W., Johnson told Wright she heard glass crunching inside the trailer, as if someone were still in it walking around. Wright reentered the trailer through the same window. Someone called out, "It's me." Wright responded, "Who is me?" The person responded, "It's me. You know me." Then, Johnson, who was standing outside, heard the abandoned trailer's front door shut and noticed Moton running from the trailer down the street. Wright caught up with Moton. When Wright challenged him, Moton said, "bring it." Wright found Moton's bicycle lying in some weeds near the abandoned trailer; so he took the bicycle as "evidence," but the next morning it had disappeared from his possession.
 ¶ 4. After retrieving S.W. from the abandoned trailer, Johnson took her to her aunt's house twice. At trial, Johnson's aunt explained that Johnson initially brought S.W. to her house after the incident, and Johnson examined her daughter. Then, after Johnson took S.W. home, S.W. "went to screaming" when she urinated. Therefore, Johnson returned to her aunt's house so the aunt could inspect S.W.'s genital area. Johnson also wanted to compare her child to her niece, who was about the same age. She testified that S.W.'s genital area did not look "normal" for a two year old. She found S.W.'s vagina to be red, bloody, and scratched.
 ¶ 5. Further, after Johnson reassured her daughter, S.W. told her "that boy" took her out of the house. When Johnson asked if he touched her or hurt her, S.W. pointed down to her privates and to her mouth. Johnson's aunt also confirmed at trial that when S.W. was asked what Moton did to her, "she opened her mouth and patted down between her legs." The next day, Johnson took her child to the hospital, *Page 1290 
where a rape kit and examination were performed on S.W. for possible sexual battery.
 ¶ 6. Upon investigating S.W.'s abduction, Officer Mario Magsby of the Coahoma County Sheriffs Office interviewed Moton, who, after waiving his Miranda rights, admitted in a sworn statement to being in the abandoned trailer with S.W. However, according to his version of the night's events, he was rescuing S.W. In his statement, which was entered into evidence at trial, Moton explained he was going to buy some beer when, as he passed the abandoned trailer, he heard a voice coming from it. He entered the trailer and found the little girl, whom he recognized as Wright's child. He was about to take her to her home when Wright jumped through the window and demanded to know what was going on. Moton claims that the next day Wright came over to his house, and the two men got into a fist fight over the situation.
 ¶ 7. A Coahoma County grand jury indicted Moton on three counts: burglary, kidnapping, and sexual battery. Before trial, the State filed a motion in limine to exclude a condom that was found in the abandoned trailer, along with the respective crime lab report, which excluded both S.W.'s and Moton's DNA from the DNA found on the condom. The trial judge ruled that the condom and report were irrelevant and granted the State's motion in limine.
 ¶ 8. At trial, the State called several witnesses, including: Wright, Johnson, Johnson's aunt, a nurse who performed the rape kit, a physician, and a criminal investigator. S.W. did not testify due to her tender age. During the State's case-in-chief, Wright testified that he had noted, while searching for S.W., that the back door to the trailer appeared to be tampered with, and its lock picked. He definitively remembered locking the trailer door when he went to pick up Johnson from work. Photographs and testimony were entered into evidence by the State proving the back trailer door was elevated off the ground about two feet, in an effort to demonstrate that S.W. could not have walked out of the trailer unassisted. Wright specifically testified that, while S.W. could walk, she had never walked out of the trailer unassisted and could not unlock the door by herself. Further, Moton had no permission from either parent to come into the trailer and take S.W.
 ¶ 9. Johnson testified that generally, since the evening at issue, S.W. has had several behavioral changes. "[I]t took her back to being a baby." Johnson claimed S.W. started urinating in her bed and would not go around the house in the dark. She also clarified that when S.W. accused "that boy" of taking her out of the trailer, Moton was not present in the room.
 ¶ 10. Cynthia Robertson, a nurse at the regional hospital where S.W. was brought the day after the incident, testified that she took a photograph of S.W.'s genital area that day, which was entered into evidence "to show what appears to be . . . unusual redness [and] irritation to the vaginal area." Robertson also admitted the possibility that the redness could be compatible with an infection.
 ¶ 11. Next, Dr. Rodney Baine, the medical director of the emergency room at the same regional hospital, testified that he examined S.W. as well, stating, "[o]n physical exam the only pertinent physical findings were an irritation of the vagina; a vaginitis type thing, red. . . . swollen and irritated." He could not say that there was an infection present. Finally, the last witness for the State to take the stand was Officer Magsby. He noted that S.W. was not interviewed by law enforcement during their investigation. *Page 1291 
 ¶ 12. The State rested, and the defense moved for a directed verdict, which was denied. The jury deliberated for forty-five minutes and returned a verdict of guilty to all three counts of the indictment. Pursuant to the jury instructions, the jury determined Moton would receive life imprisonment for the kidnapping charge in Count II.[2] The circuit court judge then sentenced Moton to twenty years each for the burglary and sexual battery charges, to run concurrently with the life imprisonment sentence. Moton filed a motion for a judgment notwithstanding the verdict (JNOV) or, in the alternative, for a new trial, which was denied. Moton timely appealed to this Court.
 DISCUSSION OF THE ISSUES 1. Whether the trial court erred in failing to grant Moton's motion for a directed verdict, JNOV, or, in the alternative, motion for a new trial.
 ¶ 13. Moton submitted a motion for a directed verdict at the close of the State's case-in-chief, which was denied. Moton also filed a motion for a JNOV or, in the alternative, a new trial, which was also denied.
a. Sufficiency of the Evidence
 ¶ 14. A motion for a directed verdict and a JNOV both challenge the legal sufficiency of the evidence. Randolphv. State, 852 So.2d 547, 554 (¶ 16) (Miss. 2002). The standard of review is the same for both: "The prosecution must be given the benefit of all favorable inferences that may be reasonably drawn from the evidence." McClain v. State,625 So.2d 774, 778 (Miss. 1993) (citation omitted). The evidence will be reviewed in the light most favorable to the State.Id. (citing Esparaza v. State, 595 So.2d 418,426 (Miss. 1992)). Furthermore, all credible evidence consistent with the defendant's guilt will be accepted as true.Id. (citing Spikes v. State, 302 So.2d 250,251 (Miss. 1974)). "[R]eversal can only occur when evidence of one or more of the elements of the charged offense is such that `reasonable and fair minded jurors could only find the accused not guilty.'" See Stewart v. State, 909 So.2d 52,56 (¶ 16) (Miss. 2005) (citation omitted). Finally, this case is a circumstantial evidence case, meaning there is not an eyewitness or a confession. Stephens v. State,911 So.2d 424, 437 (¶ 43) (Miss. 2005) (citing Mangum v.State, 762 So.2d 337, 344 (¶ 21) (Miss. 2000)). The State is allowed to prove crimes solely by circumstantial evidence, but such evidence must be "sufficient to prove the defendant's guilt beyond a reasonable doubt and to the exclusion of every reasonable hypothesis consistent with innocence." Fleming v. State, 604 So.2d 280, 288
(Miss. 1992) (citing Brown v. State, 556 So.2d 338,340 (Miss. 1990)).
 ¶ 15. Moton argues that there was insufficient evidence presented to prove the elements of burglary, kidnapping, and sexual battery beyond a reasonable doubt. We proceed to discuss each charge in turn.
1. Burglary
 ¶ 16. Moton was charged with burglary of a dwelling pursuant to Mississippi Code Annotated section 97-17-23 (Rev. 2006), which provides: "Every person who shall be convicted of breaking and entering the dwelling house or inner door of such *Page 1292 
dwelling house of another, whether armed with a deadly weapon or not . . . with intent to commit some crime therein" shall be punished by imprisonment. Two elements must be proven to convict a person of burglary: unlawful breaking and entering and the intent to commit some crime once entry is accomplished.Harrison v. State, 722 So.2d 681, 685 (¶ 11) (Miss. 1998) (citing Alford v. State, 656 So.2d 1186,1192 (Miss. 1995)).
 ¶ 17. Regarding the first element of burglary, the State presented evidence that the back door of the trailer had been tampered with. Wright insists that when he left the trailer to meet Johnson, he had locked all of the trailer's doors. Wright also testified that it appeared someone had been picking, "snatching, beating on [the door] or something, like they broke in. Been tampered with." Photographs entered into evidence are consistent with this statement, as the door appears damaged. Wright also stated it would be very easy to break into a trailer if you "know what you are doing," as the doors are not very sturdy.
 ¶ 18. Regarding the intent element of burglary, "it is usually shown by acts and declarations of the defendant coupled with facts and circumstances surrounding him at the time."Washington v. State, 753 So.2d 475, 478 (¶ 15) (Miss.Ct.App. 1999) (quoting Newburn v. State,205 So.2d 260, 265 (Miss. 1967)). Photographic and testimonial evidence showed the trailer's back door had no steps, and the distance from the door to the ground, approximately two feet, was too far for a two-year-old child to reach unassisted. Moton admits he was in the abandoned trailer with S.W., but he maintains he was rescuing her. However, this statement does not explain how S.W. traveled from her home to the abandoned trailer. Nobody else was noted in the vicinity at the time S.W. was found, and Moton's bicycle was found thrown in some weeds near the abandoned trailer. Moton also knew that S.W. had been left alone, as he had spoken to Wright when Wright was on his way to meet Johnson, and Moton knew Wright had two small children in the trailer. This evidence, combined with the evidence regarding the kidnapping and sexual battery charges, is sufficient to prove Moton's intent in breaking and entering into the trailer was to kidnap and sexually batter S.W. We find sufficient evidence in the record of both elements of burglary to support the jury's verdict.
2. Kidnapping
 ¶ 19. Moton was also charged with kidnapping under Mississippi Code Annotated section 97-3-53 (Rev. 2006), which states in part:
 Any person who, without lawful authority and with or without intent to secretly confine, shall forcibly seize and confine any other person, or shall inveigle or kidnap any other person with intent to cause such person to be confined or imprisoned against his or her will, or without lawful authority shall forcibly seize, inveigle or kidnap any child under the age of sixteen (16) years against the will of the parents or guardian or person having the lawful custody of the child, upon conviction shall be imprisoned for life in the custody of the Department of Corrections if the punishment is so fixed by the jury in its verdict.
When Wright and Johnson returned to the trailer, S.W. was missing. A reasonable juror could find beyond a reasonable doubt that a two-year-old child could not traverse the height difference from the trailer to the ground and end up in the abandoned trailer. Furthermore, there is no testimony that Moton had permission to enter the trailer and take custody or possession of S.W. In his statement, Moton admitted that he was in the abandoned trailer with *Page 1293 
S.W., who later told her mother "that boy" took her out of her home. Even though Moton was not present when S.W. made this statement, it can be reasonably inferred that she meant Moton. Wright's and Johnson's testimony corroborate that Moton was indeed in the trailer when they finally found S.W., as does Moton's own statement. After rescuing S.W. through the abandoned trailer's window, Johnson advised Wright she heard the sound of glass crunching, as if someone were still in there. When Wright asked who was there, the person responded, "It's me. You know me." Johnson then saw Moton running from the abandoned trailer down the street, indicating Moton had just exited the trailer and had some guilty knowledge. See Brownv. State, 690 So.2d 276, 294 (Miss. 1996) (stating evidence of flight probative of guilt or guilty knowledge). Furthermore, when Wright caught up with him, Moton defiantly stated, "bring it," challenging Wright to a fight. Accordingly, we find the jury had sufficient evidence to convict Moton of kidnapping.
3. Sexual Battery
 ¶ 20. Moton was charged with the sexual battery of S.W. pursuant to Mississippi Code Annotated section 97-3-95(1)(d) (Rev. 2006), which reads in pertinent part: "(1) A person is guilty of sexual battery if he or she engages in sexual penetration with . . . (d) A child under the age of fourteen (14) years of age, if the person is twenty-four (24) or more months older than the child." Sexual penetration has been defined as the essential element of sexual battery. Johnsonv. State, 626 So.2d 631, 632 (Miss. 1993) (citingThompson v. State, 468 So.2d 852, 853 (Miss. 1985)). "Penetration, however slight, is sufficient to establish the penetration element of sexual battery." Burrows v.State, 961 So.2d 701, 706 (¶ 17) (Miss. 2007) (citingJohnson, 626 So.2d at 633). Sexual penetration includes "cunnilingus, fellatio, buggery or pederasty, any penetration of the genital or anal openings of another person's body by any part of a person's body, and insertion of any object into the genital or anal openings of another person's body." Miss. Code Ann. § 97-3-97(a) (Rev. 2006). Penetration does not need to be established by actual medical evidence.Wilson v. State, 606 So.2d 598, 600 (Miss. 1992). Additionally, penetration, "need not be proved in any particular form of words, and circumstantial evidence may suffice." Lang v. State, 230 Miss. 147, 158-59,87 So.2d 265, 268 (1956).
 ¶ 21. Viewing the evidence in the light most favorable to the State, we find that there was sufficient evidence of the sexual penetration of S.W. to the exclusion of every reasonable hypothesis of Moton's innocence. After finding her daughter, Johnson took S.W. to her aunt's home because S.W. cried when she urinated. Both Johnson and her aunt inspected S.W.'s genitals and compared them to Johnson's niece of the same age. They found S.W.'s genital area looked abnormal: it was red, bloody, and scratched. When queried by Johnson about whether "that boy" "touched her" or "hurt her," S.W. pointed between her legs and to her mouth. Johnson took her daughter to the hospital the next day, where a rape kit was performed. The doctor and nurse who examined S.W. both testified at trial. The nurse testified that S.W.'s genital area was red and irritated. Dr. Baine testified that S.W.'s vagina was red, swollen, and irritated, and there was no evidence of infection. A photograph of S.W.'s genital area, which was entered into evidence, confirms the statements regarding the appearance of S.W.'s genital area. We find sexual penetration could be inferred beyond a reasonable doubt from the above facts without S.W.'s testifying at trial. Therefore, based on the foregoing, we find sufficient evidence *Page 1294 
to support the conviction of sexual battery.
 ¶ 22. Viewing the evidence in the light most favorable to the State, we find reasonable and fair-minded jurors could not have found Moton not guilty of the charges of burglary, kidnapping, and sexual battery. Accordingly, the trial court did not err in denying Moton's motions for a directed verdict or a JNOV.
b. Weight of the Evidence
 ¶ 23. It is well established that matters involving the weight of the evidence are to be resolved by the jury.Hawthorne v. State, 835 So.2d 14, 21 (¶ 32) (Miss. 2003) (citing Neal v. State, 451 So.2d 743, 758
(Miss. 1984)). This Court's authority to disturb a jury verdict is limited. Melton v. State, 723 So.2d 1156,1161 (¶ 29) (Miss. 1998) (citing Benson v. State,551 So.2d 188, 192-93 (Miss. 1989)). All of the evidence will be viewed "in the light consistent with the verdict," and the State will be given all favorable inferences that may be drawn from that evidence. Id. (quoting Strong v.State, 600 So.2d 199, 204 (Miss. 1992)). "[W]e will only disturb a verdict when it is so contrary to the overwhelming weight of the evidence that to allow it to stand would sanction an unconscionable injustice." Bush v. State,895 So.2d 836, 844 (¶ 18) (Miss. 2005) (citing Herring v.State, 691 So.2d 948, 957 (Miss. 1997)). To reverse, this Court must be convinced that the circuit court abused its discretion in failing to grant a new trial. Collier v.State, 711 So.2d 458, 461 (¶ 12) (Miss. 1998) (citingHerring, 691 So.2d at 957).
 ¶ 24. Moton contends that even if we find evidence sufficient to support the verdict and he is not entitled to an acquittal as a matter of law, we should grant him a new trial, as the verdict is against the overwhelming weight of the evidence.
 ¶ 25. We disagree. The evidence indicates Moton had motive and intent to break into Wright and Johnson's trailer and take S.W. for the purpose of sexually battering her. He knew she was alone in the trailer, and it was not difficult to break and enter into the trailer. There was evidence the back door had been tampered with. Moton, in his own statement, admitted to being alone with the child in an abandoned trailer. S.W. could not have climbed out of her residential trailer and into an abandoned trailer by herself. Soon after the incident, S.W. stated "that boy" touched her, and she pointed to her genital area and mouth. Physical examination of S.W.'s genital area confirmed irritation, swelling, and redness. Examining the evidence in the light consistent with the verdict, we do not find that allowing the verdict to stand sanctions an unconscionable injustice. Therefore, the trial court did not err in denying Moton's motion for a new trial.
 2. Whether the trial court erred in granting the State's motion in limine to exclude evidence of a condom and related crime lab report.
 ¶ 26. Prior to trial, the State moved to exclude a used condom found in the abandoned trailer where S.W. was found and the related crime lab report, which stated that the DNA found on the condom did not match Moton's or S.W.'s DNA. In its motion, the State argued that while it did not intend to introduce the condom or report in its case-in-chief, the defense may seek to introduce it during its case-in-chief. The judge granted the State's motion in limine, stating that while the condom was part of the crime scene, it was not relevant. Moton now argues that this evidence is relevant to show Moton was not the person who was with S.W. in the abandoned trailer, and that he merely heard her while passing by and went inside to investigate. Thus, he claims it verifies his version of the events. *Page 1295 
 ¶ 27. "A trial judge enjoys a great deal of discretion as to the relevancy and admissibility of evidence. Unless the judge abuses this discretion so as to be prejudicial to the accused, the Court will not reverse this ruling." Turner v.State, 732 So.2d 937, 946 (¶ 31) (Miss. 1999) (quotingFisher v. State, 690 So.2d 268, 274 (Miss. 1996)). The State's motion in limine explained that the condom was found amidst debris and used drug paraphernalia which indicated that the abandoned trailer "had been used for drugs and other related activity." At the hearing, the prosecution explained that the abandoned trailer was a "known crack house." Photographs of the trailer entered into evidence show open windows and a window without glass, making it easy for anyone to enter. The record indicates Moton did not present any specific reasons why the negative results of the condom's DNA test was relevant to his defense, either at the hearing or in his motion for a JNOV. Even though Moton's DNA was not found on the condom, since sexual penetration can include other objects besides a penis, such as the tongue or fingers, it would not necessarily be relevant to prove he did not sexually batter S.W., if Moton had made that argument before the trial court. More likely, it would have confused the issues and mislead the jury. We find the trial court did not abuse its discretion in granting the State's motion in limine.
 CONCLUSION ¶ 28. Based on the discussion above, we affirm Moton's convictions and sentences.
 ¶ 29. THE JUDGMENT OF THE CIRCUIT COURT OF COAHOMACOUNTY OF CONVICTION OF COUNT I, BURGLARY, AND SENTENCE OFTWENTY YEARS; COUNT II, KIDNAPPING, AND SENTENCE OF LIFEIMPRISONMENT; AND COUNT III, SEXUAL BATTERY, AND SENTENCE OFTWENTY YEARS, WITH THE TWENTY-YEAR SENTENCES IN COUNTS I ANDIII TO RUN CONCURRENTLY WITH THE LIFE IMPRISONMENT SENTENCEIN COUNT II ALL IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENTOF CORRECTIONS, IS AFFIRMED. ALL COSTS OF THIS APPEAL AREASSESSED TO COAHOMA COUNTY.
KING, C.J., LEE AND MYERS, P.JJ., GRIFFIS, ISHEE, ROBERTS AND CARLTON, JJ., CONCUR. IRVING, J., CONCURS IN PART AND IN THE RESULT.
[1] The victim's name in this case has not been identified to protect her anonymity, as the victim is a minor.
[2] Pursuant to Mississippi Code Annotated section 97-3-53
(Rev. 2006), a person convicted of kidnapping "shall be imprisoned for life" in the custody of the MDOC "if the punishment is so fixed by the jury in its verdict. If the jury fails to agree on fixing the penalty at imprisonment for life, the court shall fix the penalty at not less than one (1) year nor more than thirty (30) years" in the custody of the MDOC.